IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH CLIFFORD MALCOMB, | ) |
| | ) Civil Action No. 11 - 1087 |
| Plaintiff, | ) |
| | ) United States District Judge |
| v. | ) Arthur J. Schwab |
| | ) |
| CRAIG MCKEAN, Pennsylvania State Police; | ) United States Magistrate Judge |
| and JOSHUA THOMAS, Pennsylvania State Police, | ) Cynthia Reed Eddy |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion for Summary Judgment (ECF No. 40) be granted, and that the sole remaining count for malicious prosecution in Plaintiff's Complaint be dismissed with prejudice.

**II.    REPORT**

   **A.    Relevant Procedural History**

Plaintiff Joseph Clifford Malcomb initiated this action *pro se* in August 2014 while confined as an inmate at the State Correctional Institution at Greensburg, Pennsylvania, pursuant to 42 U.S.C. §§ 1983 and 1985 alleging violations of his constitutional and state rights against two members of the Pennsylvania State Police ("PSP") - Trooper Joshua Thomas ("Trooper Thomas") and Trooper Craig McKean ("Trooper McKean").[1]    (ECF No. 3).    On November 23, 2011, the undersigned issued a Report and Recommendation, recommending that the

---

[1] Trooper Thomas has served 12 years as a Trooper with the PSP.    Trooper McKean was subsequently Corporal, and is currently retired after 25 years of service.

Complaint be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915A. (ECF No. 14). Specifically, the Court recommended dismissing the claim for malicious prosecution on the grounds that the criminal proceeding did not end in Plaintiff's favor. *Id.* at 7-11. Further, the Court recommended dismissing all of the remaining claims on statute of limitations grounds. *Id.* at 6. The District Judge adopted said Report and Recommendation on December 19, 2011, (ECF No. 15), which Plaintiff appealed.

On August 15, 2013, the Court of Appeals vacated the Order dismissing Plaintiff's Complaint and remanded the case for further proceedings in accordance with its Opinion. (ECF Nos. 21). The Court of Appeals issued its Mandate on September 11, 2013, (ECF No. 22), and this Court reopened the case on September 17, 2013. (ECF No. 23). Notably, in its Opinion, the Court of Appeals only discussed the dismissal of the malicious prosecution claim, concluding "that Malcomb's complaint should not have been dismissed based on his failure to satisfy the favorable termination prong." (ECF No. 22-2 at 6). It did not address or disturb the dismissal of any of the other claims. Thus, it is reasonable to conclude that those claims were properly dismissed in the District Judge's Memorandum Order from December 19, 2011 adopting the Report and Recommendation. (ECF No. 15).

On December 30, 2013, the Court received notice from Plaintiff that he had been released from prison. (ECF Nos. 31). On February 20, 2014, Defendants filed an Answer to the Complaint. (ECF No. 34). This Court issued a Case Management Order on February 24, 2014, which set forth deadlines for discovery and summary judgment. (ECF No. 35). In said Order, Plaintiff was advised by the Court of his obligation to respond to a Motion for Summary Judgment and was provided with the copied text of Federal Rule of Civil Procedure 56 and this

district's Local Rule 56 for guidance. *Id*. 2-4. Plaintiff was also advised that failure to deny or otherwise controvert any alleged undisputed facts contained in Defendants' Concise Statement of Material Facts would be deemed an admission, and that failure to comply with the Order would result in the Motion being decided without the benefit of his response. *Id.* at 4.

On March 28, 2014, Defendants filed a Notice Regarding Discovery, certifying that they "mailed all responsive documents in their possession to plaintiff in compliance with the Court's [February 24, 2014 Case Management] Order." (ECF No. 36). On May 5, 2014, the Court received a Notice from Plaintiff regarding his change of address. (ECF No. 39).

On June 18, 2014, Defendants filed a Motion for Summary Judgment, (ECF No. 40), along with a Brief in Support, (ECF No. 41), a Concise Statement of Undisputed Material Facts (ECF No. 42), and an Appendix, (ECF No. 43). On June 23, 2014, out of an abundance of caution, this Court issued a Remark, reminding Plaintiff that the Case Management Order from February 24, 2014 was still in effect and that he had until July 31, 2014 to respond to Defendants' Motion and supporting documents. (Text-Only Remark from 6/23/2014). Notwithstanding the above, Plaintiff has not responded to Defendants' Motion as of the time of this Report. Therefore, as Plaintiff was warned in the previous Order, the matter is ripe for disposition without the benefit of his response.

B.  **Factual Background**

Because Plaintiff has failed to respond to Defendants' Concise Statement of Undisputed Material Facts (ECF No. 42), all of the facts contained therein are deemed to be admitted by Plaintiff. *See* W.D.Pa. LCvR 56.E. ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts …, which are claimed to be undisputed, will for the purpose

of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."); *Emigh v. Miller*, 2010 WL 2926213, *4 (W.D.Pa. 2010)("[C]ourts in this district have strictly applied Local Rule 56 and deemed uncontroverted facts to be admitted."). Accordingly, for purposes of Defendants' motion, the following facts from the Concise Statement of Undisputed Material Facts are controlling:

1. Defendant Craig McKean was a Trooper with the Pennsylvania State Police (PSP) at the time of the allegations in this lawsuit. (Ex. 1 ¶1)

2. Trooper McKean was subsequently promoted to Corporal and is now retired following 25 years of service with the PSP. (Ex. 1 ¶1)

3. Defendant Joshua Thomas is a Trooper with the PSP and has served for twelve years in that capacity. (Ex. 2 ¶1)

4. The PSP was investigating a series of burglaries beginning in October 2007 that spanned several counties in western Pennsylvania. (Ex. 1 ¶2, Ex. 2 ¶2, Ex. 3 p. 21, Ex. 4 p. 2[1], Ex. 5 p. 6, Ex. 6 p. 2, Ex. 7 p. 2)

   > FN1: The page numbers for the Incident Report exhibits (Exs. 3-7) are found in a box in the bottom right corner of the pages.

5. It was obvious that the burglaries were related to each other because they shared a common method of entry. (Ex. 1 ¶2)

6. The burglaries were committed by two individuals, James Lunceford and Paul Crisp. (Ex. 1 ¶¶2-3, Exs. 3-7, generally)

7. Lunceford and Crisp brought many of the items they stole to 112 Bauer Road, Monaca, Pa. (Ex. 1 ¶3, Ex. 4 p. 2, Ex. 5, p. 6, Ex. 7, p. 3)

8. 112 Bauer Road was the residence of the plaintiff, Joseph Malcomb. (Ex. 1 ¶1, Ex. 2 ¶2, Ex. 3 p. 3, Ex. 4 p. 1, Ex. 5 p. 7, Ex. 6 p. 1, Ex. 7 p. 1)

9. After storage at plaintiff's residence, the stolen items were sold on the black market in West Virginia. (Ex. 1 ¶3, Ex. 6 p. 2)

10. At that time in 2007, plaintiff was on parole. (Ex. 1 ¶4, Ex. 8 p. 9)

11. On December 5, 2007, parole agents and local police searched plaintiff's residence for an unrelated matter. (Ex 1 ¶4, Ex. 8, p. 8-9)

12. The defendants did not know of this search at the time. (Ex. 1 ¶4, Ex. 2 ¶2)

13. The parole agents found alcohol and a weapon (pocket knife) at plaintiff's residence during the December 5, 2007 search. (Ex. 8 p. 9-10)

14. The possession of alcohol and the weapon were technical violations of plaintiff's parole. (Ex. 8 p. 10)

15. Plaintiff was not present at his residence during the December 5, 2007 search. (Ex. 8 p. 9-10)

16. The following day, December 6, 2007, plaintiff was arrested and incarcerated as a technical parole violator. (Ex. 8 p. 10)

17. Lunceford was arrested and taken into custody on December 6, 2007 by Trooper Thomas when he tried to sell stolen guns out of a motel room. (Ex. 2 ¶2, Ex. 5 p. 2-3)

18. Lunceford was interviewed by Trooper McKean on December 20, 2007. (Ex. 1 ¶2, Ex. 3 p. 2, Ex. 5 p. 6, Ex. 6 p. 2, Ex. 7 p. 3)

19. During that interview, Lunceford stated that he and Crisp were involved in numerous burglaries. (Ex. 1 ¶6, Ex. 5, p. 6, Ex. 6 p. 2)

20. During that interview, Lunceford also stated that he and Crisp brought most of the stolen items from those burglaries to plaintiff's residence. (Ex. 1 ¶6, Ex. 5, p. 6, Ex. 6 p. 2)

21. Lunceford specifically mentioned that he and Crisp brought a Vizio television they had stolen to plaintiff's residence and that it was located in plaintiff's bedroom. (Ex. 1 ¶6, Ex. 5, p. 6)

22. Lunceford also stated that he saw a civil war era pistol in plaintiff's residence that he knew was stolen. (Ex. 1 ¶6, Ex. 7 p. 3)

23. Lunceford also stated that a tire and radio from a jeep that he and Crisp had stolen were at plaintiff's residence. (Ex. 1 ¶6, Ex. 7 p. 3)

24. Lunceford stated that he and Crisp had brought the stolen jeep to plaintiff's residence. (Ex. 1 ¶6, Ex. 7 p. 3)

25. Plaintiff did not want the jeep but he did want the spare tire and radio. (Ex. 1 ¶6, Ex. 7 p. 3)

26. Lunceford and Crisp then abandoned the stolen jeep near plaintiff's workplace. (Ex. 7 p. 3)

27. Unknown to Lunceford, the jeep had already been recovered and the items he said were missing were indeed missing, corroborating his statement. (Ex. 7 p. 3)

28. Trooper McKean also interviewed plaintiff in the Beaver County Jail on or about December 20, 2007, where he was being held on the parole violation. (Ex. 1 ¶7)

29. Plaintiff denied any wrongdoing under the theory that, although the stolen items had been brought to his residence, he did not touch them once they were there. (Ex. 1 ¶7)

30. Trooper McKean was in possession of inventories of items stolen in the burglaries that had been compiled by the local police agencies who had investigated them. (Ex. 1 ¶5, Ex. 2 ¶3)

31. Trooper McKean knew that plaintiff was on parole on the time. (Ex. 1 ¶4)

32. Trooper McKean spoke to Parole Agent Mark Bendon and learned for the first time about the search of plaintiff's residence on December 5, 2007. (Ex. 1 ¶4)

33. Trooper McKean spoke to the parole agent who had conducted the search and asked if any of the stolen items on the inventories had been seen at plaintiff's residence during the search. (Ex. 1 ¶5)

34. From this conversation, Trooper McKean learned that many of the stolen items on his inventories had indeed been seen in plaintiff's residence. (Ex. 1 ¶5)

35. Based on the information from the parole officers and the interviews with Lunceford and plaintiff, Trooper McKean concluded that he had probable cause to apply for a search warrant to search 112 Bauer Road, Monaca, Pennsylvania, plaintiff's residence. (Ex. 1 ¶8)

36. Trooper McKean applied for a search warrant with an affidavit of probable cause. (Ex. 1 ¶8, Ex. 10)

37. The search warrant was approved and issued by Magisterial District Judge C. Douglas Loughner. (Ex. 1 ¶8, Ex. 10)

38. Trooper McKean and Trooper Thomas, who Trooper McKean had asked to help him, executed the search warrant on the evening of December 21, 2007. (Ex. 1 ¶9, Ex. 2 ¶2, Ex. 3 p. 2, Ex. 4 p. 2, Ex. 5 p. 6, Ex. 6 p. 2)

39. The December 21, 2007 search was the only involvement Trooper Thomas had with the investigation of plaintiff. (Ex. 2 ¶2)

40. Troopers McKean and Thomas found many of the stolen items on the inventory sheets they had at plaintiff's residence. (Ex. 1 ¶10, Ex. 2 ¶3)

41. They found the stolen Vizio television in plaintiff's bedroom. (Ex. 1 ¶10, Ex. 2 ¶3, Ex. 5 p. 6)

42. They found the radio from the stolen jeep. (Ex. 1 ¶10, Ex. 2 ¶3)

43. They found a drill press from Lunceford and Crisp's employer that they knew to be stolen. (Ex. 4 p. 1-2)

44. They found music CDs that they knew to have been missing from one of the burglary victims. (Ex. 5 p. 6)

45. They found an Apex DVD player in plaintiff's bedroom that they knew to be stolen from one of the burglary victims. (Ex. 6 p. 2)

46. They also found other items that were not on their lists but that they suspected to have been stolen. (Ex. 1 ¶10, Ex. 2 ¶3)

47. One set of these suspicious items was three expired driver's licenses from one of the burglary victims that they found in plaintiff's bedroom. (Ex. 1 ¶10, Ex. 2 ¶3, Ex. 3 p. 1-2)

48. The Troopers prepared an inventory of everything they seized and left a copy in the residence. (Ex. 1 ¶9, Ex. 2 ¶3, Ex. 11)

49. There were a total of 19 classes of items seized from plaintiff's residence. (Ex. 1 ¶ 10, Ex. 11)

50. They also prepared a property record listing the same items that was kept at the barracks. (Ex. 1 ¶9, Ex. 2 ¶3, Ex. 12)

51. Many of the seized items were later claimed by their rightful owners. (Ex. 1 ¶11, Ex. 2 ¶4, Ex. 13)

52. The number "4" in the column labeled "Disposition Code" on the Property Record indicates property returned to its owner. (Ex. 1 ¶11, Ex. 2 ¶4, Ex. 13 p. 1-2)

53. Item 16, the stolen drill press, was claimed by its owner. (Ex. 13 p. 3, 8)

54. Items 19, 17, and 9, respectively the car stereo, car rim, and a bad of music cds, were claimed by their owner. (Ex. 13 p. 5)

55. Item 10, a set of music cds, was returned to its owner. (Ex. 13 p. 9-10)

56. The owner of the Vizio television stated that she did not want it returned. (Ex. 13 p. 11-13)

57. The owner of the stolen driver's licenses did not want them returned and asked that they be destroyed. (Ex. 1 ¶10, Ex. 3 p. 6)

58. Several items were unclaimed by their owners and were returned to Crisp's girlfriend. Though they are marked with a "4", it is unknown if she was their rightful owner or not. (Ex. 1 ¶11, Ex. 2 ¶4, Ex. 13 p. 4)

59. Lunceford was interviewed for a second time by Trooper McKean on February 21, 2008. (Ex. 4 p. 2)

60. During that interview, Lunceford confirmed that the drill that had been found at plaintiff's residence was stolen. (Ex. 4 p. 2)

61. Plaintiff was interviewed by Trooper McKean for a second time on June 3, 2008. (Ex. 1 ¶12, Ex. 4 p. 4, Ex. 5 p. 6, Ex. 6 p. 5, Ex. 7 p. 5)

62. Plaintiff stated that he knew Crisp and Lunceford. (Ex. 7 p. 5)

63. Plaintiff stated Crisp and Lunceford would always come around and he would help them when he could. ( Ex. 1 ¶12, Ex. 7 p. 5)

64. He stated that Crisp had the keys to his house. (Ex. 7 p. 5)

65. Plaintiff admitted that Lunceford and Crisp brought items to his residence that he assumed were stolen, but that he was not involved in taking them. (Ex. 5 p. 6, Ex. 7 p. 5)

66. Plaintiff admitted that the stolen items were in his home, but he did not touch them. (Ex. 1 ¶12, Ex. 6 p. 5)

67. Plaintiff admitted that he knew Lunceford and Crisp were using his home to hide stolen items. (Ex. 6 p. 5)

68. Plaintiff admitted that the stolen television was in his room. (Ex. 5 p. 6)

69. Plaintiff admitted that he knew the drill was in his basement and that it was probably stolen. (Ex. 1 ¶ 12, Ex. 4 p. 4)

70. Plaintiff admitted that the stolen dvd player was in his bedroom. (Ex. 6 p. 5)

71. Plaintiff admitted that Lunceford and Crisp had brought the stolen jeep to his house, but he did not take it. (Ex. 6 p. 5)

72. Plaintiff admitted that the stereo and spare tire from the stolen jeep were in his house. (Ex. 7 p. 5)

73. Trooper McKean filed charges against plaintiff on August 8, 2008 for five counts each of receiving stolen property and conspiracy to receive stolen property. (Ex. 1 ¶13, Exs. 14-18)

74. Trooper McKean filed the charges on the date he did because it took a long time to gather all of the necessary evidence, since the burglaries were widespread and in many jurisdictions. (Ex. 1 ¶13)

75. Trooper Thomas did not file charges against plaintiff. (Ex. 2 ¶5)

76. Trooper McKean filed the charges against plaintiff because there was probable cause he had committed the crimes based on the evidence that was gathered. (Ex. 1 ¶15)

77. Trooper McKean did not file any charges out of malice towards plaintiff. (Ex. 1 ¶15)

78. Once charges were filed, Trooper McKean had nothing further to do with the case with the exception of testifying at a subsequent suppression hearing. (Ex. 1 ¶14)

79. Following the suppression hearing, Judge Dohanich of the Court of Common Pleas of Beaver County suppressed the seized evidence. (Ex. 8)

80. Judge Dohanich ruled that there were defects in the warrant and the scope of the search. (Ex. 8)
81. Judge Dohanich did not make any ruling as to whether there was probable cause for charges to be filed against plaintiff. (Ex. 8)

82. The District Attorney decided to nolle prosse all charges against plaintiff on September 10, 2009. (Ex. 19)

83. Neither Trooper McKean nor Trooper Thomas had any input into the decision to nolle prosse. (Ex. 1 ¶15, Ex. 2 ¶5)

84. Plaintiff was denied re-parole on his unrelated technical parole violation several times over the next few years. (Ex. 9)

85. Plaintiff was granted re-parole on October 29, 2013. (Ex. 9 p. 12)

86. Plaintiff remained incarcerated as a technical parole violator for the unrelated parole violation during the entire period from his arrest in 2007 until his release in 2013. (Ex. 9)

87. Neither Trooper McKean nor Trooper Thomas had any input on the decisions made by the parole board. (Ex. 1 ¶14, Ex. 2 ¶5)

88. Neither Trooper McKean nor Trooper Thomas knew about any of the decisions of the parole board. (Ex. 1 ¶14, Ex. 2 ¶5)

Defendant's Concise Statement of Undisputed Material Facts (ECF No. 42).

### C. Standard of Review – Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. Of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v.*

*Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admission) to meet his burden of providing elements essential to his claim. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

Under this district's local rules, a motion for summary judgment must be accompanied by a "separately filed concise statement setting forth the facts essential for the Court to decide the motion for summary judgment, which the moving party contends are undisputed and material. . . . A *party must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part or the record* supporting the party's statement, acceptance, or denial of the material fact." W.D.Pa. LCvR 56.B.1 (emphasis added). The same is required of a plaintiff's responsive statement of material facts. W.D.Pa. LCvR 56.C.1. *See Bowman v. Mazur*, 2010 WL 2606291, *3, n.1 (W.D. Pa. 2010). Unless a defendant's concise statement of material facts is "specifically denied or otherwise controverted by a separate concise statement of the opposing party," they are deemed to be admitted by the plaintiff. W.D.Pa. LCvR. 56.E.

D. **Discussion**

In order to prevail on a claim for malicious prosecution under § 1983, a plaintiff must satisfy the following elements:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in plaintiff's favor;

11

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of a liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

Defendants contend that Trooper Thomas is entitled to Summary Judgment because Plaintiff cannot establish the first element: that Trooper Thomas initiated the criminal proceeding. Trooper Thomas' only involvement in the investigation was his assistance to Trooper McKean in executing the search warrant. He did not otherwise participate in the investigation, did not file charges against Plaintiff, and did not knowingly provide false information that influenced the decision to initiate criminal proceedings. *See Wilson v. Dewees*, 977 F.Supp.2d 449, 458 (E.D.Pa. 2013)(holding that an officer can be held responsible for initiating criminal proceedings for knowingly providing false information to prosecutors despite not actually preparing the incident report or criminal complaint.) Accordingly, for this reason alone, Trooper Thomas is entitled to Summary Judgment.

Defendants further contend that both Troopers are entitled to Summary Judgment because Plaintiff cannot satisfy elements three through five of a malicious prosecution claim, arguing that there was probable cause to charge Plaintiff with receiving stolen property, the Troopers did not act maliciously, and that Plaintiff did not suffer a deprivation of liberty. Here, in failing to controvert any of Defendants' Concise Statement of Undisputed Material Facts, Plaintiff has admitted that there was probable cause to believe that the property was stolen and

that the troopers did not act with malice, *see* W.D.Pa. LCvR 56.E., thereby negating the third and fourth element of a malicious prosecution claim. Moreover, regarding the fifth element – that Plaintiff suffered a deprivation of liberty – Defendants point out that when the search of his residence was carried out, Plaintiff was already incarcerated on the unrelated technical parole violation. Plaintiff remained incarcerated until 2013, after several denials of re-parole by the parole board, which were based on a number of violations that were unconnected to Trooper McKean and Trooper Thomas. Consequently, Plaintiff cannot establish that the Defendants' actions caused him to suffer a deprivation of liberty. Thus, Plaintiff cannot establish a claim for malicious prosecution, and Defendants are entitled to Summary Judgment as a matter of law.

Defendants further assert, in the alternative, that they are entitled to Summary Judgment because they are deserving of qualified immunity. The doctrine of qualified immunity "shields public officials from § 1983 damage actions if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine if an official is entitled to qualified immunity, courts apply a two-step process: determine whether the defendant(s) violated the Plaintiff's constitutional right, and determine whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *See Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006); *Askew v. Kelchner,* 2007 WL 763075, *3 (M.D.Pa. 2007). The court can analyze these two factors in either order "in light of the circumstances in the particular case at hand." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010) (quoting *Pearson*, 555 U.S. at 236). At the summary judgment stage, the court analyzes qualified immunity along with its analysis of the merits of the claim. *Askew*, 2007 WL 763075 at *3 (citations omitted).

13

Defendants concede that the right to be free from prosecution without probable cause is a clearly established right. Nevertheless, Trooper McKean or Trooper Thomas did not violate any constitutional right of Plaintiff, and Plaintiff is unable to prevail on the merits against the Defendants of his malicious prosecution claim, as detailed above. Thus, Defendants are entitled to qualified immunity.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 40) be granted, and that the sole remaining count in the Complaint for malicious prosecution be dismissed with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court regarding Magistrate Judges, Objections to this Report and Recommendation are due by **September 10, 2014**. Failure to timely file Objections will constitute waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

August 27, 2014.

cc: Joseph Clifford Malcomb, BW3347
5 Singer Ave
McKees Rocks, PA 15136

Timothy Mazzocca via CM-ECF